Dear Mr. Conner:
On behalf of the Plaquemines Parish Council, you have submitted a request for an Attorney General's Opinion regarding the Plaquemines Parish Civil Service Commission's authority to reallocate positions of employment within the Plaquemines Parish Government. Specifically, the Council is interested in determining if the Commission can reallocate positions without the approval of the Council and without the Council's input with respect to the impact of such reallocations on the Plaquemines Parish Government's Budget.
La. Const. Art. X establishes the State and City Civil Service "for persons holding offices and positions of trust or employment in the employ of the state" and "in the employ of each city having over four hundred thousand population". La. Const. Art. X, Sec.14 provides authority for the establishment of parochial civil service systems for parish employees by local option election, and pertinently provides, in Sec. (B):
 "If a majority of the electors vote to adopt this Part, its provisions shall apply permanently to the city, the parish, or the city-parish, as the case may be, and shall govern it as if this Part had originally applied to it. In such case, all officers and employees of the city, the parish, or the city-parish, as the case may be, who have acquired civil service status under a civil service system established by legislative act, city charter, or otherwise, shall retain that status and thereafter shall be subject to and be governed by this Part and the rules and regulations adopted under it."
With regard to the power and authority of Civil Service Commissions established under La. Const. Art. X, the Louisiana Supreme Court stated in Civil Service Commission of the City ofNew Orleans v. Guste, 428 So.2d 457 (La. 1983):
 "Under the 1974 Constitution, the Civil Service Commissions are autonomous bodies with circumscribed duties. The merit system they administer is self operative and established in the Constitution. Their constitutionally delineated powers and duties are above change or modification by the Legislature, and such powers and duties are exclusive." (Emphasis added).
La. Const. Art. X, Sec. 10(A), provides with respect to rules adopted by the various Civil Service Commissions, and states:
 "(A) Rules. (1) Powers. Each commission is vested with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, qualifications, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan: and generally to accomplish the objectives and purposes of the merit system of civil service as herein established.
 (4) Effect. Rules adopted pursuant hereto shall have the effect of law"
Pertinent to this constitutional provision are the decisions rendered by the First Circuit Court of Appeal in Appeal ofBrissett, 436 So.2d 654 (La.App. 1st Cir. 1983) and Frazier v.Department of Civil Service, 449 So.2d 95 (La.App. 1st Cir. 1984). In Appeal of Brissett the court stated:
 "the Commission has the exclusive power to establish a uniform pay and classification plan for all certified employees. A fortiori, we now hold that the power vested in the Commission by Article X, Sec. 10(A) of the Constitution is exclusive in nature with respect to all aspects of the classified service listed therein." (Emphasis added).
The Frazier v. Department of Civil Service decision states:
 "The Commission has rule-making power, and its rules have the effect of law. La. Const. Art. X, Sec. 10(A)(1) and (4). If a Civil Service rule is reasonable and not violative of basic constitutional rights, it must be given effect by the courts. Thoreson V. Department of State Civil Service, 433 So.2d 184
(La.App. 1st Cir. 1983), writ denied, 440 So.2d 726 (La. 1983), reconsideration denied, 442 So.2d 452 (La. 1983). Civil Service rules even prevail over acts of the legislature which may be in conflict with them. Smith v. Department of Health and Human Resources, 416 So.2d 94 (La. 1982)." (Emphasis added).
Various decisions rendered by the courts of this state make it clear that once a uniform pay and classification plan has been properly authorized or adopted by the state or a local government, La. Const. Art. X requires and provides that the respective civil service commission alone has the authority to set compensation and implement that plan. Civil Service Commission of the City NewOrleans v. Rouchon, 374 So.2d 164 (4th Cir. 1979); See also:Barnett v. Develle, 289 So.2d (La. 1974); Thoreson v. Departmentof State Civil Service, supra.
The Louisiana Supreme Court has opined with respect to the interest of the individual members of a classified civil service in their positions, and presumably as well, their interest in the rules which establish the uniform pay and classification plan under which they are employed. In Bell v. Department of Healthand Human Resources, 483 So.2d 945 (La. 1986), the Court stated:
 "The provisions of the state constitution involving the Civil Service, Article X, Sec. 1 et seq., and the Rules of the Commission are designed to secure adequate protection to the public career employee from political discrimination. They embrace the merit system, and their intent is to preclude favoritism. The purpose of the Civil Service Rules is to guarantee the security and welfare of the public service With this in mind, it is clear that tenure or classified civil service status is a property right within the meaning of Article I, Sec. 2 of our constitution " (Citations omitted).
In accordance with Article X of the Constitution and the above-cited decisions, it is the opinion of this office that all civil service employees have the right to a fairly administered uniform pay and classification plan, and the various civil service commissions have the right and responsibility to independently administer and regulate those plans pursuant to rules properly adopted by them.
The above-cited judicial decisions also make it clear that pursuant to La. Const. Art. X a civil service commission's administration of its pay and classification plan is to be exercised and conducted independently of the other branches or entities of government. Civil Service Commission of the City NewOrleans v. Rouchon, supra. Accordingly, in the case of a parochial civil service system, the parochial civil service commission would not be required to consult with or obtain the approval of the parish governing authority in connection with the administration of it's properly authorized and adopted uniform pay and classification plan.
We are advised that the citizens of Plaquemines Parish have availed themselves of the constitutional authority provided in La. Const. Art. X, Sec. 14, and in an election held on October 1, 1994, the voters of Plaquemines Parish elected to adopt a civil service system for parish employees. Thereafter, as required by La. Const. Art. X. Sec. 10, the Plaquemines Parish Civil Service Commission adopted a uniform pay and classification plan, by adoption of its Rules (the "Rules") and it's Pay Plan for Classified Service (the "Plan"). On September 26, 1996, pursuant to Ordinance No. 96-133, the Plaquemines Parish Council approved the Rules and the Plan (subsequently amended), and ordered the Civil Service Director to begin implementation of both. In our opinion, these actions gave the Plaquemines Parish Civil Service Commission the right and responsibility to independently administer its uniform pay and classification plan, as embodied in its Rules and its Plan.
Rule IV of the Rules, at Section 1, entitled OBJECTIVE, provides:
 "The pay plan shall be designed to identify and define levels of salaries for work performed within the Parish classified employees system, based on job evaluation and a study of salary and fringe benefits. Job evaluation shall establish internal equity and the salary and fringe benefits study shall establish external comparability. The primary purpose of the plan shall be to provide a method of compensation that can be applied consistently to all job classifications." (Emphasis added).
Rule IV, Section 3.1 provides:
 "The pay of all positions in the classified service shall be determined in accordance with the Pay Plan in effect and in accordance with these Rules, regardless of any provisions or appropriations for any different salary rate or mode of payment for any position."
Most pertinently, Rule IV, Section 3.7 states:
 "REALLOCATION: Positions may be reallocated to a higher or lower range based on changes in responsibilities, departmental reorganization, etc."
It is the opinion of this office that the Plaquemines Parish Civil Service Commission has the right and responsibility to independently implement and administer its Plan in accordance with its Rules. In our opinion the Plaquemines Parish Civil Service Commission can reallocate positions, whether higher or lower, in accordance with its Plan and Rules, without consulting with the Plaquemines Parish Government. Furthermore, the Plaquemines Parish Civil Service Commission can approve reallocations of its employees, in accordance with its Rules and the Plan, without receiving the approval of the Plaquemines Parish Government that funding is adequate.
Please be advised that this office appreciates the Council's concerns regarding any impact such actions of the Civil Service Commission may have upon the Parish's budget. However, in accordance with the constitutional scheme, once a uniform pay and classification plan has been adopted by the Plaquemines Government the Civil Service Commission alone has the authority to implement it. The Council retains the authority to approve or disapprove future Pay Plans and can, of course, give every consideration to Parish budgetary concerns as future Plans are submitted for its approval.
We trust the foregoing to be of assistance.
Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
BY: ________________________________
 JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
CCF, jr./JMZB/dam